UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN GRAY,

       Petitioner,                    Case No. 03-CV-71658

v.

                                  HON. AVERN COHN

RAYMOND BOOKER,

       Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Norman Gray
(Petitioner) is a state inmate at the Ryan Correctional Facility in Detroit, Michigan,
where he is serving a life sentence for armed robbery, in violation of M.C.L. § 750.529;
and being a fourth felony habitual offender, under M.C.L. § 769.12.  Petitioner has filed
a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of
his constitutional rights.  Respondent, through the Attorney General's Office, filed a
response, arguing that petitioner's claims are meritless, procedurally defaulted and/or
barred by the statute of limitations.  For the reasons which follow, the petition will be
denied.

### II.  Procedural History

In 1999, Petitioner was convicted following a jury trial in the Livingston County

Circuit Court.  Petitioner filed an appeal of right to the Michigan Court of Appeals, which affirmed petitioner's conviction and sentence.  *People v. Gray*, No. 220815 (Mich.Ct.App. June 29, 2001).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court.  The Michigan Supreme Court granted leave to appeal on petitioner's claim involving the prosecutor's cross-examination of petitioner's alibi witnesses, but subsequently affirmed petitioner's conviction.  *People v. Gray,* 466 Mich. 44 (2002)(per curiam).  The Michigan Supreme Court denied petitioner leave to appeal with respect to his remaining claims.  *People v. Gray,* 466 Mich. 857 (2002).

On May 2, 2003, petitioner filed a petition for writ of habeas corpus.  Petitioner subsequently filed a motion to hold the petition in abeyance so he could present an unexhausted claim to state court.  The Court granted the motion.  (Doc. 23).

Petitioner returned to state court.  To this end, he filed a post-conviction motion for relief from judgment, which was denied.  *People v. Gray,* No. 99-010877-FC (Livingston County Cir. Ct., October 21, 2004).  The Michigan appellate courts denied petitioner leave to appeal.  *People v. Gray,* No. 259133 (Mich. Ct. App. June 24, 2005); *lv. den.* 474 Mich. 938 (2005).

Petitioner's then returned to federal court.[1]  In his original and amended petitions

---

[1]The Court acknowledges the significant lapse of time from when Petitioner returned to federal court and the reopening of his case.  Petitioner, in January 2006, returned to federal court and filed a paper styled "Petition Adding Issues for Writ of Habeas Corpus After Being Held in Abeyance Pending Exhaustion Requirement."  For reasons the Court has not been able to determine, no action was taken.  Over four years later, in June of 2010, petitioner filed a letter inquiring as to the status of his case, among other things.  No action was taken.  Eventually, in August 2011, the stay was lifted, and the case was reopened and returned to the Court's active docket.  The case has proceeded at a typical pace since then.

2

for a writ of habeas corpus, petitioner seeks habeas relief on the following fifteen (15)

grounds:

> I. The trial court erred, thereby depriving petitioner of due process of law and his right to confront and cross examine witnesses under the U.S. Constitution by permitting witnesses, Frank Venegas and Faye Walker to view a video tape and testify the petitioner was the person appearing in the tape engaged in the act of robbery, where the ultimate question for the jury was whether petitioner was the person photographed on the video tape engaging in robbery, and where petitioner's cross examination of the witnesses could lead to disclosure of prejudicial information not related to this offense.

> II. Petitioner's right to due process of law under the U.S. Constitution has been denied requiring petitioner's conviction for armed robbery to be vacated because there is insufficient evidence supporting his conviction.

> III. The pretrial presentation of video recordings of the robbery to Faye Walker, together with the knowledge that her employer previously identified defendant as the perpetrator of the offense were such as to make the resulting identification inevitable, therefore, constitutionally inadmissible as a matter of law.

> IV. The prosecutor's cross-examination of defense witnesses concerning their failure to contact the prosecutor's office denied petitioner of due process and a fair trial.

> V. The prosecutor impermissibly vouched for the truthfulness of Frank Venegas and Faye Walker, thereby depriving petitioner of due process of law guaranteed under the United States Constitution.

> VI. The trial court erred in denying a mistrial where the prosecutor impermissibly injected petitioner's criminal record into the trial, thereby depriving petitioner of due process of law guaranteed under the United States Constitution.

> VII. Petitioner was ineffectively assisted by counsel because, 1) counsel failed to impeach Faye Walker's testimony relative to when she first met petitioner, 2) failed to move for an identification hearing to ascertain the basis for the prosecution's witness, 3) failed to object to the testimony of Faye Walker with respect to identification of petitioner, 4) failed to have the court strike the improper comment of Frank Venegas that he first met petitioner from the work camp program out of Camp Brighton, 5) failed to make known that the prosecution witness lied or was mistaken with respect to the time which petitioner was employed at Ideal Steel, 6) failed to object to comments

by the prosecutor that the prosecutor personally believed petitioner was guilty, and 7) failed to object to the prosecutor's denigration of defense witnesses.

VIII. Petitioner was denied due process as guaranteed him under the Fourth and Fourteenth amendments of the United States Constitution where the prosecution allowed a prosecution witness to testify incorrectly.

IX. The trial court committed reversible error and violated petitioner's federal constitutional right to a fair trial in outright refusing the jury's request to review the video tape of the armed robbery.

X. The cumulative effect of the errors at trial denied petitioner a fair trial.

XI. Petitioner was denied due process and a fair trial when the trial court denied the jury's request to review the video on a larger screen to more easily identify the suspect on the tape.

XII. Petitioner was deprived of his right to due process and a fair trial by the improper admission of the lay opinion testimony of Faye Walker where there was no special foundation laid to show she had any specialized knowledge which would assist the court in determining a fact in issue.

XIII. Petitioner was deprived of his due process right to a fair trial when the trial court admitted into evidence, over objection and absent proper foundation, a distorted surveillance tape for purposes of allowing Frank Venegas and Faye Walker to positively identify petitioner in a video so distorted that no proper identification could be made.

XIV. Petitioner was denied the effective assistance of counsel when counsel failed to object to the suggestive pretrial identification where it was suggested that petitioner was the person depicted in the video and where counsel failed to object to the prosecutor's improper closing arguments which misstated the facts and misled the jury.

XV. Petitioner was denied the effective assistance of appellate counsel by his counsel's failure to raise the previously listed four issues.

### III.  Facts

The material facts leading to petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

4

410, 413 (6th Cir. 2009):

> On November 15, 1998, Michael Abbo was working in his family-owned convenience store.  The store was monitored by four video cameras, three located inside the store and one located outside the store.  The inside cameras were directed at the door, the location behind the cash register, and the location of the paying customer.  At 3:00 p.m., a man with a "heavy mustache" entered the store.  Abbo could not describe the man's facial features, but he described the man as six feet tall, two hundred pounds, and African-American.  The man was wearing a hat and an "Ideal Steel" jacket. Ideal Steel is a company located several miles from the convenience store. The man purchased items that were located at the back of the store, then returned to the back of the store.  Abbo was not afraid of the man because he had seen him before.  Abbo waited on other customers.  When the store was empty, the man returned to the counter, pulled out a gun, and demanded "all the money."  The man instructed Abbo to lock himself in the restroom. Approximately five to fifteen seconds later, Abbo heard someone outside the restroom door.  A female was trying to enter the restroom.  Abbo told her that he had been robbed.  She tried to get the license plate number of a vehicle leaving the parking lot, but police were unable to correlate the number to a vehicle.  Abbo called the police, but continued to serve customers without locking the store.  Therefore, any potential evidence was compromised.  The cameras videotaped the robbery, and the tape was turned over to the police. Abbo viewed a line-up on January 14, 1999, but was unable to identify the perpetrator of the crime from the line-up.  The men in the line-up were not wearing hats, and all of the men had beards.

> Frank Venegas, the owner of Ideal Steel, testified that thirty percent of his workforce were minorities.  Venegas testified that he had known defendant for fourteen years as an employee of Ideal Steel, but the employment had not been for a continuous period.  Instead, defendant worked for Venegas on two separate occasions.  Venegas "guessed" that the first employment period lasted two to three years.  During this time, Venegas had contact and spoke with defendant every other day.  The conversations ranged in duration from minutes to two hours.  The second employment period lasted six to nine months in 1997.  Contact between defendant and Venegas during this second employment period occurred once a week or every two weeks.  In November 1998, police brought the videotape of the store robbery to Venegas.  Venegas had "no doubt" that defendant was the man in the videotape robbing the convenience store.   Additionally, Venegas testified that there was "no doubt" that defendant's voice was on the videotape.

> Faye Walker, vice president of Ideal Steel, began working for the company in 1986.  Each week, Walker would deliver paychecks to the employees, including defendant.  Walker knew defendant by name and spoke to him in

the shop.  Walker acknowledged that defendant worked for Ideal Steel on two different occasions.  The second time that he was employed by Ideal Steel, defendant worked from January 1997 to June 1997.  Walker identified a photograph of defendant wearing a hat while he was working for Ideal Steel.  Walker viewed the videotape of the robbery and identified defendant and his voice as the person she observed on the tape.  Walker believed that defendant worked for Ideal Steel for four or five years, but could not identify exact dates.

Defendant relied on three witnesses to support his alibi defense.  Defendant's next door neighbor, Richard Stull, testified that between 2:15 and 2:45 p.m., he helped defendant check the fluids in a vehicle.  While Stull was previously uncertain of the exact date that he had aided defendant, he was now certain that it was the day of the robbery.  Defendant's daughter testified that she saw him on the day of the robbery at his home in Detroit.  Defendant's wife testified that defendant picked her up from work and could not have driven from Detroit to the location of the robbery.  Defendant's witnesses saw the videotape and determined that he was not the man who had robbed the convenience store.

*People v. Gray,* No. 220815, Slip. Op. at * 1-2.

## IV.  Analysis

### A.  Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted).

Recently, the Untied States Supreme Court held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Section 2254(d) does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, but rather, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

7

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

## B.  Statute of Limitations

Respondent first contends that the original and amended habeas petitions are subject to dismissal because they were not filed in compliance statute of limitations found in 28 U.S.C. § 2244(d)(1).  Respondent argues that the petition is untimely because petitioner failed to comply with the conditions set by the Court in holding petitioner's original habeas petition in abeyance so that he could return to the state courts to properly exhaust his claim involving the jury's request to review the videotape of the crime on a larger screen.  Although acknowledging that petitioner complied with the time limits in filing his state post-conviction motion and in re-filing his habeas petition at the conclusion of his state post-conviction proceedings, respondent argues that petitioner nonetheless failed to comply with the terms of the order because he did not actually raise in his state post-conviction motion the very unexhausted issue for which the stay was issued in the first place.  Respondent further argues that several of the issues raised by petitioner in his amended habeas petition are untimely because they do not relate back to the claims raised by petitioner in his first petition.

With respect to respondent's first contention, the Court has been unable to locate any caselaw either in the Sixth Circuit or in other circuits which suggests that a stay of a habeas petition can be vacated *nunc pro tunc* simply because the habeas petitioner

8

failed to exhaust a particular claim when he or she returned to the state courts. *Palmer v. Carlton,* 276 F 3d 777 (6th Cir. 2002), the case relied upon by respondent, merely suggests that a stay of a habeas petition can be vacated if the petitioner does not comply either with the time limits for returning to the state court to initiate post-conviction proceedings or with the time limits for returning to the federal court after state post-conviction proceedings have concluded.

Regarding the allegedly new issues raised by petitioner in his amended petition, the Court notes that most of these claims appear to be reiterations of the claims raised by petitioner in his original petition, so they would appear to relate back to the original claims.

In any event, although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999)(internal citations omitted). Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F. 3d 426, 429, n. 2 (6th Cir. 2006)(quoting *Trussell v. Bowersox,* 447 F. 3d 588, 590 (8th Cir. 2006)). Simply put, the Court need not resolve the dispute over the timeliness of petitioner habeas application. Assuming without deciding that the current petition was timely, petitioner's habeas application fails on the merits. *See Ahart v. Bradshaw,* 122 Fed. Appx. 188, 192 (6th Cir. 2005).

**C.  Petitioner's Claims**

9

As noted above, petitioner has raised multiple claims. For judicial clarity, the Court has organized and addressed related claims together.

### 1. Claims I. and XII. - Admission of Lay Opinion Testimony

In his first habeas claim, petitioner argues that the trial court erred by permitting Frank Venegas and Faye Walker to offer their opinion that petitioner was the person on the videotape who committed the armed robbery.

The Michigan Court of Appeals rejected petitioner's claim, explaining:

> The challenged testimony was admissible because it was "rationally based" on the witnesses' perceptions and was helpful to "the determination of a fact in issue." MRE 701. The fact that identification was the "ultimate" issue at trial did not preclude the testimony. Otherwise admissible opinion evidence is not objectionable merely because it embraces an ultimate issue to be determined by the trier of fact. MRE 704. A lay witness may express an opinion regarding the ultimate issue if the facts and circumstances indicate that the opinion is based on the witness' own knowledge. See *People v. Drossart*, 99 Mich.App 66, 73; 297 NW2d 863 (1980). Furthermore, the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. MRE 403; *People v. McAllister*, 241 Mich.App 466, 470; 616 NW2d 203 (2000). The witnesses' testimony, relating to their knowledge of defendant and the length and nature of the relationship, could be explored without revealing that defendant was first employed as part of a work-release program from Camp Brighton, a Department of Corrections facility.

*Gray,* Slip. Op. at * 2-3 (footnote omitted).

Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Spalla v. Foltz,* 615 F. Supp. 224, 234 (E.D. Mich. 1985). In addition, federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845

10

F.2d 610, 614 (6th Cir. 1988)).  The Michigan Court of Appeals concluded that Venegas'

and Walker's testimony was permissible lay opinion under state evidentiary law.  This

Court sitting on federal habeas review may not conclude otherwise, thus, petitioner is

not entitled to habeas relief on his claim that Venegas' and Walker's testimony was

impermissible lay opinion testimony. *See Charles v. Thaler*, 629 F. 3d 494, 500 (5th Cir.

2011).

 To the extent that petitioner contends that the identification testimony of Venegas

and Walker should have been excluded under M.R.E. 403 for being more prejudicial

than probative, he is not be entitled to habeas relief.  Appraisals of the probative and

prejudicial value of evidence are entrusted to the sound discretion of a state trial court

judge, and a federal court considering a habeas petition must not disturb that appraisal

absent an error of constitutional dimensions.  *See Dell v. Straub*, 194 F. Supp. 2d 629,

645 (E.D. Mich. 2002).  So long as a state court's determination that evidence is more

probative than prejudicial is reasonable, a federal court on habeas review will not

overturn a state court conviction. *See Clark v. O'Dea,* 257 F.3d 498, 503 (6th Cir. 2001).

In the present case, the Michigan Court of Appeals' conclusion that the probative value

of this identification testimony was not outweighed by the danger of unfair prejudice was

not unreasonable.

 In his twelfth claim, petitioner argues that he was denied his right to cross-

examine the witnesses because he could not have impeached their statements without

disclosing his prior convictions.  Petitioner relies on *United States v. Calhoun*, 544 F. 2d

291 (6th Cir. 1976).  In *Calhoun*, the Court of Appeals for the Sixth Circuit held that the

trial court abused its discretion in admitting the lay opinion testimony of the defendant's

11

parole officer identifying the defendant as the robber shown in the bank surveillance photographs, because the defendant could not freely examine his relationship between himself and the witness without revealing the prejudicial fact that defendant was on parole at the time of the robbery.  *Id.,* at 295-296.

As the Michigan Court of Appeals indicated, petitioner's reliance on *Calhoun* is misplaced, because petitioner's parole officer was not called as a witness.  Petitioner was employed as a worker at Ideal Steel.  Although Venegas did inadvertently mention that petitioner was on work release status from Camp Brighton (see discussion of Claim VI., *infra*), it was unnecessary for petitioner himself to reveal that he was on parole in order to examine his work relationship between himself and Venegas and Walker. Accordingly, the admission of their identification testimony would not entitle petitioner to habeas relief.  *See U.S. v. Cobleigh*, 75 F. 3d 242, 249 (6th Cir. 1996)(police agent's identification of defendant in photographs and on videotape taken at one of conspirator's premises did not prejudice defendant where there was no preexisting relationship between agent and defendant which would limit defendant's cross-examination of agent).  Petitioner is therefore not entitled to habeas relief on his first or last claims.

## 2.  Claim II. - Sufficiency of the Evidence

Petitioner next contends that there was insufficient evidence presented to establish that he was the perpetrator of the armed robbery.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364

12

(1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard.  *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to

13

weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing Mich. Comp. Laws 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

Petitioner contends that there was insufficient evidence to establish his identity as the perpetrator of the robbery. Although the victim did not identity petitioner as his assailant, Venegas and Walker identified petitioner as the perpetrator of the robbery on the surveillance videotape. Their testimony, which the jury believed, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that petitioner committed the armed robbery. *See e.g. Lovely,* 337 F. Supp. 2d at 977. The fact that the jury rejected the alibi testimony offered by petitioner's neighbor and relatives does not mean that the evidence was insufficient. Petitioner is therefore not entitled to habeas relief on his second claim.

### 3. Claim III. and part of Claim XIV. - Suggestive Identification

In this third claim, petitioner contends that Faye Walker's identification testimony should have been suppressed because it was tainted in various ways.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive

14

procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

Petitioner first argues that Walker's identification was tainted by Venegas' prior identification of petitioner in the videotape.  However, as the Michigan Court of Appeals indicated, *Gray,* Slip. Op. at * 3, the extent of Walker's knowledge of Venegas' interaction with the police was not preserved at the trial court level.  Petitioner has

15

offered no evidence to suggest that Walker had any prior knowledge that Venegas had identified petitioner in the surveillance videotape.  Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998)(conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief).  Because this portion of petitioner's claim is unsupported, he is not entitled to habeas relief.

Petitioner next contends that it was suggestive to show the surveillance videotape to Walker because it amounted to an impermissible one person show up in that petitioner was the only subject on the videotape.  Walker, however, previously knew petitioner from his employment at Ideal Steel.  The video was shown to Walker to get her to confirm or deny that petitioner was the person on the videotape.  It is not unduly suggestive to show a surveillance videotape or photograph of a single suspect to a person who already knows the suspect when it is done for the purpose of confirming whether the defendant is the person on the videotape or photograph. *See U.S. v. Beverly,* 369 F. 3d 516, 539 (6th Cir. 2004).  Petitioner is not entitled to habeas relief on his third claim.

As part of his fourteenth claim, petitioner contends that Walker's identification was tainted because it was made at the preliminary examination.  This claim too fails. The mere fact that petitioner may have been identified by Walker at a preliminary examination does not make the identification procedure unreliable or unnecessarily or

impermissibly suggestive.  In *Baker v. Hocker*, 496 F. 2d 615, 617 (9th Cir. 1974), the Ninth Circuit held that a robbery victim's identification of the defendant at a preliminary hearing, after having failed to identify him at a police lineup, was not unnecessarily or impermissibly suggestive, even though the petitioner in that case was seated at the preliminary hearing next to the two co-defendants whom the victim had previously identified, thereby suggesting that petitioner was the third robber.  In rejecting the claim, the Ninth Circuit admitted that any in-court identification confrontation, whether at a preliminary hearing or at trial, "carries with it the stigma of the inevitable suggestion that the state thinks the defendant has committed the crime." *Id.* at 617.  However, the Court ruled that more than suggestion is required for a due process violation.  The procedure must create 'unnecessary' or 'impermissible' suggestion. *Id.*  The same result applies here.  There was nothing in Walker's identification of petitioner at the preliminary examination which shows any constitutional error.  Petitioner is therefore not entitled to habeas relief on his fourteenth claim.

### 4.  Claim IV. - Impeachment of Alibi Witnesses

Petitioner contends that the prosecutor violated his right to a fair trial by questioning petitioner's alibi witnesses about their failure to come forward with their alibi prior to trial and report it to the police or other authorities.  The Michigan Supreme Court granted leave to appeal on this claim and held that the prosecutor was not required to establish any special foundation before cross-examining petitioner's alibi witnesses about their failure to come forward before trial with exculpatory information about petitioner.  *See People v. Gray,* 466 Mich. 44 (2002).  In a similar case, the Sixth Circuit ruled that the defendant's wife's delay in providing an alibi for the defendant was a

17

proper subject of inquiry for cross-examination of the wife.  *See United States v. Aguwa*, 123 F 3d 418, 420 (6th Cir. 1997).  In light of Aguwa, and the absence of contrary Supreme Court precedent, it cannot be said that the court of appeals' rejection of petitioner's claim was unreasonable.  Petitioner is therefore not entitled to habeas relief on this claim.

### 5.  Claim V. and part of Claim XIV. - Prosecutorial Misconduct

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.  Specifically, In his fifth claim, petitioner contends that the prosecutor improperly vouched for his witnesses in the following closing remarks:

> Well, you heard the testimony from two people in this case, Mr. Venegas and Ms. Walker, people who aren't under the stress of having a gun pointed at them.  People who have had regular contact with Norman Gray and in the case of Mr. Venegas had known him for a very long time.  14 years.  And as Mr. Venegas testified, that contact over that 14 year period ranges from contact everyday to contact every other week.  He was a man he had known for a very long time, was familiar with, recognized him and these are people who are not related to Mr. Gray.  They have no ax to grind.  Mr. Gray wasn't a current employee, so there's no concern about well they didn't really like him in the work place and wanted to get rid of him.  They've got no reason to hurt him and frankly they have no reason to help him either.  You saw Mr. Venegas and Ms. Walker testify.  They had an opportunity to judge how they felt as they were testifying and frankly I think you could see that they sounded disappointed that they could recognize Norman Gray in that tape.  Disappointed but confident and not just confident, but positive.  Absolutely positive beyond any doubt in their minds whatsoever that Norman Gray was the man in that videotape.  And I ask you to consider the firmness of that recognition and of that identification in light of the fact that they know exactly what it means to sit in that chair and say that that man is the man in the videotape.  That's not something that's easy.  That's not something that people want to do.  That's not something that people like to do.  Deep down, they probably don't want to identify Mr. Gray.  They would probably have liked nothing better than to say, no that's not Norman Gray or even just to say, well I'm not really sure.  That probably would make them very comfortable with that.  But you heard them testify that, no there is no doubt in their mind that Norman Gray is the man in the videotaope and that was not

an easy thing for them to do.

(Tr. 5/21/1999, pp. 14-16).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt

19

or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999)(internal citations omitted).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.*  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *Gray,* Slip. Op. at * 3, the prosecutor's comments, when viewed in context, were based on the evidence and any reasonable inferences from it.  The majority of the comments appear to be that Venegas and Walker had no reason to falsely identify petitioner. Numerous cases have held that a prosecutor does not engage in vouching by arguing that his

20

witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie).

Moreover, any alleged vouching for the credibility of witnesses did not rise to the level of a due process violation, in light of the fact that the jury was informed by the judge that the prosecutor's arguments were not evidence and the judge instructed jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. (Tr. 5/21/1999, pp. 67, 69-72). *Byrd,* 209 F. 3d at 537-38. Thus, habeas relief is not warranted on petitioner's fifth claim.

As part of his fourteenth claim, petitioner contends that the prosecutor misrepresented the facts by suggesting in his closing argument that Venegas had had a continuous relationship with petitioner for fourteen years when petitioner, in fact, had been incarcerated between 1986 and 1997. The prosecutor argued that Venegas' identification of petitioner was reliable because he had known petitioner for fourteen years. (Tr. 5/21/1999, p. 14).

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant

impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir.

2000)(*quoting Donnelly v. DeChristoforo*, 416 U.S. at 646).  Likewise, it is improper for a

prosecutor during closing arguments to bring to the jury any purported facts which have

not been introduced into evidence and which are prejudicial.  *Byrd*, 209 F. 3d at 535.

However, prosecutors must be given leeway to argue reasonable inferences from the

evidence. *Id.*

Here, the prosecutor in this case did not suggest that Venegas had continuous

contact with petitioner for fourteen years, only that he had known him for fourteen years.

In any event, petitioner acknowledges that he had worked for Venegas for 23 months,

certainly a long enough period for Venegas to become acquainted with petitioner, so as

to render his identification reliable.  Petitioner has failed to show that he was prejudiced

by the prosecutor's remarks.  Thus, he is not entitled to habeas relief on this part of his

fourteenth claim.

### 6.  Claim VI.  - Failure to Declare a Mistrial

Petitioner claims that the trial court erred in failing to grant his motion for a

mistrial after the prosecutor injected petitioner's criminal record into evidence.

Petitioner refers to testimony from Venegas that petitioner came to work for him through

a work release program out of Camp Brighton.

A trial court has the discretion to grant or deny a motion for mistrial in the

absence of a showing of manifest necessity. *See Walls v. Konteh,* 490 F. 3d 432, 436

(6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).  The

Michigan Court of Appeals rejected petitioner's claim that he was entitled to a mistrial,

finding that Venegas' remark was isolated and unsolicited from the prosecutor. *Gray,*

Slip. Op. at * 4.  The Court agrees.  Because Venegas' brief remark was unsolicited by the prosecutor, the failure to declare a mistrial did not deprive petitioner of a fair trial, particularly when this remark was a small part of the evidence against petitioner. *See U.S. v. Martinez,* 430 F. 3d 317, 337 (6th Cir. 2005).  The court of appeals' conclusion was reasonable and not contrary to federal law.  Habeas relief is not warranted on this claim.

### 7.  Claim VIII. - Perjury

In his seventh claim, petitioner argues that the prosecutor allowed Walker to give false testimony concerning the amount of time that petitioner had worked at Ideal Steel. Petitioner alleges that Walker committed perjury by testifying that petitioner had worked continuously for their company for five years after being hired in 1986, when in fact, petitioner had been incarcerated between 1986 and 1997.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured

testimony. *Byrd v. Collins*, 209 F. 3d at 517-18.

Petitioner has failed to show that Walker committed perjury at his trial. Walker testified that she first began working at Ideal Steel in 1986 and that petitioner began working there about the same time. Although Walker indicated that petitioner worked at Ideal Steel for a period of about five years beginning at that time, she also indicated that this was an approximation as she did not have the exact dates of petitioner's employment. (Tr. 5/18/1999, p. 242). Walker was obviously relying on her recollection of events and conceded that she could not give exact dates of petitioner's employment. Petitioner has failed to show that Walker's testimony was deliberately false so as to entitle him to relief on his claim.

### 8. Claims IX., XII., and XIII. - The Videotape

Petitioner's ninth, eleventh, and thirteenth claims all pertain to the use of the videotape. In his ninth and eleventh claims, petitioner contends that the trial court erred in refusing to provide the jury upon their request with a larger television to review the videotape of the armed robbery. Petitioner is not entitled to relief based on either claim.

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 Fed.Appx. 468, 477 (6th Cir. 2006). The reason for this is that there is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). In any event, the trial court did not prevent the jury from reviewing the videotape again but only indicated that the court did not have available any equipment with which to enhance the videotape.

24

Given the lack of holdings by the Supreme Court on the issue of whether a state trial judge is required to re-read the testimony of witnesses or more importantly provide a larger television screen to view a surveillance videotape, the Michigan courts' rejection of petitioner's claims was not an unreasonable application of clearly established federal law, so as to entitle petitioner to habeas relief.  *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

In his thirteenth claim, petitioner argues that the trial court erred in admitting the surveillance videotape into evidence, because there were problems with the quality of the videotape.  Any problems with the quality of the surveillance videotape went to the weight, and not the admissibility, of the evidence. *See e.g. U.S. v. Simms,* 351 Fed. Appx. 64, 68 (6th Cir. 2009); *See also Kies ex rel. Kies v. City of Lima, Ohio,* 612 F. Supp. 2d 888, 895 (N.D. Ohio 2009).  As such, this claim does not form any basis for habeas relief.

### 9.  Claim VII., part of Claim XIV., and Claim XV. - Ineffective Assistance of Counsel

Petitioner's seventh, part of his fourteenth, and his fifteenth claims allege ineffective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within

25

the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard."  *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not

26

satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt" on a trial that took place thirteen years ago and a direct appeal over ten years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In his seventh claim, petitioner first contends that his trial counsel failed to

27

adequately impeach Walker, particularly her testimony concerning the number of years that petitioner had worked at Ideal Steel. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d at 651. "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Here, trial counsel questioned Walker extensively about the extent of her relationship with petitioner and the circumstances surrounding the identification of petitioner. Counsel questioned Walker about the fact that she only viewed the surveillance videotape for the first time prior to the preliminary examination. In response to counsel's question, Walker admitted that although the suspect in the videotape was wearing an Ideal Steel Jacket, some 100-125 such jackets had been sold or given as gifts. Walker further admitted that the style of the particular Ideal Steel jacket that the suspect was wearing on the videotape was no longer in use and had been replaced with a new jacket. On cross-examination, Walker admitted that she could not recall the specific date or year that petitioner left Ideal Steel. Walker further admitted that petitioner was gone for a period of years, leaving and returning in January of 1997. Walker admitted that Ideal Steel had a plant in Detroit as well as the one in Livingston County and that several African-Americans worked at the Detroit plant. Walker acknowledged that she worked in administration and that petitioner worked in the shop and that the two had little contact. Walker admitted that she last saw petitioner in June of 1997, about seventeen months before the robbery. (Tr. 5/18/1999, pp. 247-260). Under the circumstances, trial counsel adequately cross-examined Walker

28

concerning her recollections of petitioner's employment with Ideal Steel and the circumstances surrounding her identification of him.

Petitioner next argues in several subclaims in his seventh and fourteenth claims that trial counsel was ineffective for failing to object to the in-court identification of Faye Walker.  Although trial counsel did not move to suppress Walker's in-court identification, counsel cross-examined her extensively about the extent of her relationship with petitioner and the circumstances surrounding her identification of him on the videotape. The decision to attack the credibility of  Walker's identification of petitioner through cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002); *Monroe v. Stegall,* 197 F. Supp. 2d 753, 760 (E.D. Mich. 2001)(both citing to *Killebrew v. Endicott*, 992 F. 2d 660, 665 (7th Cir. 1993)).

Moreover, Walker had known petitioner for an extensive period of time.  Walker was also certain of her identification of petitioner as the person on the videotape.  In light of the fact that Walker's identification of petitioner was independently reliable, given her previous familiarity with petitioner, and the certainty of her in-court identification, petitioner was not prejudiced, as required to establish ineffective assistance, by trial counsel's failure to make a pretrial motion to suppress Walker's in-court and out-of-court identifications on the basis that the identification process was suggestive. *See Howard v. Bouchard,* 405 F. 3d 459, 481-485 (6th Cir. 2005).

Petitioner next contends that counsel should have objected to Venegas and Walker giving lay opinion testimony that petitioner was the person on the videotape.  As

29

discussed above in rejecting petitioner's first and twelfth claims, *supra,* the Michigan Court of Appeals ruled that it was permissible to allow Venegas and Walker to offer their opinion that petitioner was the perpetrator of the robbery seen on the videotape. Because the Michigan Court of Appeals determined that this testimony was admissible under Michigan law, the Court must defer to that determination in resolving and rejecting petitioner's ineffective assistance of counsel claim.  *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008).

Petitioner next contends that trial counsel was ineffective for failing to have Venegas' testimony concerning petitioner's work release status from Camp Brighton stricken from the record or for requesting a curative instruction, after counsel had unsuccessfully moved for a mistrial on this basis.  This claim lacks merit.   The Sixth Circuit has noted that "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment" and thus often "use objections in a tactical manner." *Lundgren v. Mitchell,* 440 F. 3d 754, 774 (6th Cir. 2006). Counsel may have chosen not to object so as not to draw the jury's attention to Venegas' brief reference to petitioner's work release status. *See e.g. Stamps v. Rees*, 834 F. 2d 1269, 1276 (6th Cir. 1987)(failure to request jury admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that ... counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them").  Petitioner has failed to rebut the presumption that trial counsel may have had a valid trial strategy for not asking that the testimony be stricken or a cautionary instruction given, so as to entitle him to relief on this claim.

30

Petitioner next contends that trial counsel was ineffective for failing to object to Walker committing perjury concerning the amount of time that he had been employed at Ideal Steel.  This claim fails because he has failed to show that the government knowingly used perjured testimony.  *See Monroe,* 197 F. Supp. 2d at 760.

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he complained of in his fifth and part of his fourteenth claims.  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's arguments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.

In his fifteenth claim, petitioner contends that his appellate counsel was ineffective for failing to raise his twelfth, thirteenth, and fourteenth claims on his appeal of right and for failing to make a better argument concerning his first claim.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  This Court has already determined that petitioner's first, twelfth, thirteenth, and fourteenth claims are without merit.  "[A]ppellate counsel cannot be found to be

31

ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### 10.  Claim X. - Cumulative Error

Petitioner finally contends that he is entitled to habeas relief because of the cumulative error.  The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief; because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief.  *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005).  As such, petitioner is therefore not entitled to habeas relief on the grounds of cumulative error.

### 11.  Additional Claims in Reply Brief

In his reply brief, petitioner for the first time appears to be raising additional claims that were not raised in his original or amended habeas petitions, nor raised in his direct appeal or his post-conviction proceeding before the Michigan courts.  A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Id.*  Because these claims are being presented for the first time in petitioner's reply brief, rather than in his original or amended habeas

32

petitions, this Court declines to address these claims, because they are not properly before this Court. *See Murphy v. Ohio*, 551 F. 3d 485, 502 (6th Cir. 2009); *See also Tyler v. Mitchell*, 416 F. 3d 500, 504 (6th Cir. 2005).

## V.  Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**  This case is **DISMISSED**.

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [2] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**SO ORDERED.**


Dated:  October 2, 2012             _S/Avern Cohn_____
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 2, 2012, by electronic and/or ordinary mail.

                                    _S/Julie Owens_____
                                    Case Manager, (313) 234-5160

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

33